UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
MATTHEW MOORE, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

-against-

ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.,

Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Docket No. 1:26-cv-5536 (LAP)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

DAVIS WRIGHT TREMAINE LLP

James Rosenfeld
Hilary Oran
Olalekan Sumonu
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
jamesrosenfeld@dwt.com
hilaryoran@dwt.com
osumonu@dwt.com

Kenneth Payson
(*pro hac vice application forthcoming*)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150
Fax: 206-757-7016
kennethpayson@dwt.com

*Attorneys for Defendants Associated Newspapers Ltd. and Mail Media, Inc.*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

I. The Parties ........................................................................................ 2

II. The Article and Plaintiff's Photo ........................................................................................ 2

III. Mail Media's Photo Crediting System ........................................................................................ 4

IV. Plaintiff's Claims ........................................................................................ 4

ARGUMENT ........................................................................................ 4

I. Legal Standard ........................................................................................ 5

II. Defendants' Publication of The Photo Was a Fair Use ........................................................................................ 5

A. The Purpose and Character of the Use Weighs in Favor of Fair Use ..................... 7

1. The Article's Use of the Photo Was Transformative ................................. 7

2. The Article Uses the Photo for News Reporting ....................................... 9

B. The Nature of the Copyrighted Work Weighs in Favor of Fair Use ................... 11

C. Defendants Used No More of the Photo than Was Reasonably Necessary. ......... 13

D. The Article Did Not Usurp the Photo's Market .................................................. 14

III. Plaintiff Has Not and Cannot Sufficiently Allege Facts Establishing a CMI Claim. ....... 17

CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)....7, 9

*Arrow Prods., Ltd., LLC, v. Weinstein Co.*,
44 F. Supp. 3d 359 (S.D.N.Y. 2014)....6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2, 5

*Bain v. Film Independent, Inc.*,
2020 WL 5491314 (C.D. Cal. Aug. 6, 2020),
*aff'd*, 2022 WL 17592422 (9th Cir. Dec. 13, 2022)....22

*Baraban v. Time Warner, Inc.*,
2000 WL 358375 (S.D.N.Y. Apr. 6, 2000)....13

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006)....16

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006)....10, 11, 13, 15

*Boesen v. United Sports Publications, Ltd.*,
2020 WL 6393010 (E.D.N.Y. Nov. 2, 2020)....12, 15

*Brown v. Netflix, Inc.*,
462 F. Supp. 3d 453 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021)....6, 13

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)....6, 10, 15

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....5

*Corley v. United States*,
556 U.S. 303 (2009)....21

*Fischer v. Forrest*,
968 F.3d 216 (2d Cir. 2020)....17

*Guity v. Santos*,
2019 WL 6619217 (S.D.N.Y. Dec. 5, 2019)....5

*Herrick v. Shutterstock, Inc.*,
2024 WL 1348754 (S.D.N.Y. Mar. 29, 2024) ....................5

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*,
538 U.S. 600 (2003) ....................21

*Kadrey v. Meta Platforms, Inc.*,
2025 WL 1786418 (N.D. Cal. June 27, 2025) ....................22

*Kelley v. Morning Bee, Inc.*,
2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) ....................16

*Kelly-Brown v. Winfrey*,
717 F.3d 295 (2d Cir. 2013) ....................6

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) ....................17, 18, 20

*Logan v. Meta Platforms, Inc.*,
636 F. Supp. 3d 1052 (N.D. Cal. 2022) ....................19, 20

*Marano v. Metro. Museum of Art*,
472 F. Supp. 3d 76 (S.D.N.Y. 2020), *aff'd,* 844 F. App'x 436 (2d Cir. 2021) ....................6, 13, 14

*May v. Sony Music Entm't*,
399 F. Supp. 3d 169 (S.D.N.Y. 2019) ....................6

*McGucken v. Newsweek LLC*,
464 F. Supp. 3d 594 (S.D.N.Y. 2020) ....................12

*McGucken v. Shutterstock, Inc.*,
166 F.4th 361 (2d Cir. 2026) ....................18, 20

*Michael Grecco Prods, Inc. v. Valuewalk, LLC*,
345 F. Supp. 3d 482 (S.D.N.Y. 2018) ....................13

*Moskal v. United States*,
498 U.S. 103 (1990) ....................21

*N. Jersey Media Grp. Inc. v. Pirro*,
74 F. Supp. 3d 605 (S.D.N.Y. 2015) ....................11

*Nunez v. Caribbean Int'l News Corp.*,
235 F.3d 18 (1st Cir. 2000) ....................8

*NXIVM Corp. v. Ross Inst.*,
364 F.3d 471 (2d Cir. 2004) ....................6

*Otto v. Hearst Commc'ns, Inc.*,
345 F. Supp. 3d 412 (S.D.N.Y. 2018)....................12

*Platform Real Est. Inc. v. United States Sec. & Exch. Comm'n*,
2020 WL 4482632 (S.D.N.Y. Aug. 3, 2020)....................4

*Regisford v. Lockamy*,
2025 WL 2444191 (S.D.N.Y. Aug. 25, 2025)....................18

*Reiner v. Canale*,
301 F. Supp. 3d 727 (E.D. Mich. 2018)....................22

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
756 F.3d 73 (2d Cir. 2014)....................6, 10, 11

*United States v. Alvarez*,
567 U.S. 709 (2012)....................21

*United States v. DiCristina*,
726 F.3d 92 (2d Cir. 2013)....................21

*Walsh v. Townsquare Media, Inc.*,
464 F. Supp. 3d 570 (S.D.N.Y. 2020).................... *passim*

*Whiddon v. BuzzFeed, Inc.*,
638 F. Supp. 3d 342 (S.D.N.Y. 2022).................... *passim*

*Yang v. Mic Network Inc.*,
405 F. Supp. 3d 537 (S.D.N.Y. 2019), *aff'd,* 2022 WL 906513
(2d Cir. Mar. 29, 2022)....................8, 14, 15

**Statutes**

17 U.S.C. §§ 107 *et seq*....................6, 9, 10, 11

17 U.S.C. § 501....................4

17 U.S.C. §§ 1202 *et seq*.................... *passim*

**Other Authorities**

Fed. R. Civ. P. 10(c)....................5

Fed. R. Civ. P. 12(b)(6)....................1, 5

U.S. Copyright Office, *Authors, Attribution, and Integrity: Examining Moral Rights in the United States*, (Apr. 2019)....................18

Defendants Associated Newspapers Ltd. ("ANL") and Mail Media, Inc. ("Mail Media") (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Matthew Moore's lawsuit asserts copyright infringement based on Defendants' use of a photograph in a news story, in what is a quintessential protected fair use. Recognizing the defects in this claim, Plaintiff attempts to concoct a second claim for the allegedly deliberate dissemination of false copyright management information ("CMI"), which is contradicted by his own pleading and ignores statutory language. 17 U.S.C. § 1202(a). Both of these meritless claims should be dismissed with prejudice.[1]

The sole article at issue was an exposé of an online hoax—an Instagram account purporting to reveal VHS "dating" tapes from the 1980s, complete with outsized personalities, dated clothing, and bouffant hairstyles. But these entertaining, virally popular "tapes" were fake, as Defendants' Article showed by juxtaposing screenshots of so-called 80's "singles" and current social media shots of the actors portraying them. One photograph of comedian Annie Sertich from a "carousel" of photos in her Instagram account (the "Photo") was used in the news article for the transformative purpose of revealing her true identity and unmasking her role in the "VHS Tapes" hoax. This Court can and should determine as a matter of law that this limited use of a single photograph is fair use, not infringement.

---

[1] The Complaint purports to bring a class action, with Plaintiff as class representative. At this stage, however, only Plaintiff's own claims are at issue.

Plaintiff's attempt to fashion a CMI claim from this use is equally flawed. Sertich's display of the Photo (as one in a series posted on her Instagram account) did not include any reference to Moore, or any other CMI. Even if Defendants' use was infringing (which it was not), Plaintiff ignores the "double scienter" requirement in Section 1202, alleging inconsistently that the copyright legend on the Photo was both *automatically* generated by Defendants' computer system, and somehow simultaneously subjectively intended to conceal infringement. Plaintiff's distorted reading of the CMI statute is incompatible with its text, purpose, and judicial construction. This claim should also be dismissed with prejudice.

## FACTUAL BACKGROUND[2]

### I. The Parties

Plaintiff Matthew Moore, a California resident, claims he owns the copyright in the Photo. Compl. ¶ 10.

Defendant Mail Media is a New York-based corporation, incorporated in Delaware, that operates the United States edition of the Daily Mail's website, dailymail.com. *Id.* ¶ 11. Defendant ANL is a London-based company that publishes the Daily Mail's print and digital properties in the UK and elsewhere. *Id.* ¶ 12.[3]

### II. The Article and Plaintiff's Photo

On December 24, 2025, Daily Mail published an article titled "VHS Dates: The unbelievable truth behind viral '80s dating videos that have taken social media by storm." Compl. Ex. 3 (the "Article"). The Article discussed the popularity of an Instagram account

[2] The facts recited here are based on the Complaint's allegations, which are assumed to be true solely for purposes of this motion only to the extent they are adequately pled and not conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Inaccuracies in the Complaint about Defendants' relationship are immaterial to the Motion so will not be addressed here.

called "VHS Dates," which purports to disclose lost dating service videotapes from the 1980s. *Id.* at 1. As the Article explains, "[i]n the hilarious and often cringeworthy clips, sad singles rocking over styled perms and shoulder pads list off what they're looking for in a partner and delusionally tout some of their own desirable traits." *Id*. However, the "unbelievable truth" that the headline references is that these "singles" were in fact *actors*, and the "VHS Tapes" were a hoax. *Id*. at 2. As the Article explains, "thousands of people online" believed the videotapes were authentic archived dating footage, before "online sleuths" recognized some of the purported daters as modern-day performers, and although the videos "look like eerily authentic time capsules …. they are in fact staged and scripted using professional actors." *Id*. at 1-2.[4]

The Article highlighted two of the video participants: "Gwen," depicted by actress Annie Sertich, and "Ronnie," depicted by performer Maddie Ballard. *Id*. at 1-2. To demonstrate the hoax, the Article used screenshots of "Gwen" and "Ronnie" along with recent photographs of Sertich and Ballard, so readers could draw their own comparisons. The caption below the Photo of Sertich stated: "'Gwen' is actually actress Annie Sertich (pictured), proving that the videos are staged and not authentic vintage tapes from the '80s." *Id.* at 2.

Plaintiff claims he took the Photo, and Sertich posted it to her Instagram page on December 15, 2025, as part of a "multi-image 'carousel' post." Compl. ¶¶ 21, 24 & Ex. 2. Plaintiff concedes that he has never sold, assigned, or licensed the image to any publisher.

[4] "VHS Dates" drew widespread attention as an internet phenomenon, including from sources questioning the photos' authenticity. *E.g.,* The New York Times, *The Truth About One of Instagram's Most Nostalgic Accounts*, YouTube (Aug. 13, 2026), https://www.youtube.com/watch?v=Ck8PDY4vCWE; *The Creators of VHS Dates Are Ready to Come Clean*, DNYUZ (Aug. 11, 2026), https://dnyuz.com/2026/08/11/the-creators-of-vhs-dates-are-ready-to-come-clean/; Matt Growcoot, *NYT Reporter Shocked to Discover VHS Dating Service Tapes Were Faked*, PetaPixel (Aug. 20, 2026), https://petapixel.com/2026/08/20/nyt-reporter-shocked-to-discover-vhs-dating-service-tapes-were-faked/.

Compl. ¶ 23. The only actual or contemplated use of the Photo referenced in the Complaint prior to Defendants' Article was Sertich's publication of it on Instagram.

### III. Mail Media's Photo Crediting System

The Complaint alleges that the photographs in Daily Mail articles come from numerous sources, including wire services and social media, and that the publication typically includes a copyright symbol (©) that identifies the source of the photograph. *Id.* ¶ 41. Plaintiff alleges this crediting system operates automatically, as part of Defendants' photo content management system, and that the assignment of a credit is a "step in Defendants' production process, not a photograph-by-photograph judgment." *Id.*

### IV. Plaintiff's Claims

Plaintiff filed his lawsuit on June 30, 2026. He alleges copyright infringement under 17 U.S.C. § 501, based solely on the publication of the Photo in the Article, and violation of 17 U.S.C. § 1202(a), premised on the inclusion of the "© instagram" legend on the Photo. Compl. ¶¶ 31, 53, 56. He does not allege that Defendants removed CMI from the photograph as it appeared on Sertich's Instagram post—nor could he, because the post did not identify Moore or contain any other CMI. *See* Compl. Ex. 2.

## <u>ARGUMENT</u>

This Court may determine as a matter of law that the challenged use of the Photo is a fair use, defeating Plaintiff's copyright infringement claim, and that Plaintiff failed to adequately allege facts establishing the required "intent" under Section 1202(a). Because these defects cannot be remedied, Plaintiff's claims should be dismissed with prejudice. *See Platform Real Est. Inc. v. United States Sec. & Exch. Comm'n*, 2020 WL 4482632, at *5 (S.D.N.Y. Aug. 3, 2020) (where an amendment would be futile, dismissal with prejudice is appropriate).

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. The Court "need not accept as true legal conclusions couched as factual allegations." *Herrick v. Shutterstock, Inc.*, 2024 WL 1348754, at *4 (S.D.N.Y. Mar. 29, 2024). "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Guity v. Santos*, 2019 WL 6619217, at *2 (S.D.N.Y. Dec. 5, 2019) (internal quotation marks omitted).[5]

## II. DEFENDANTS' PUBLICATION OF THE PHOTO WAS A FAIR USE

Plaintiff's copyright claim should be dismissed because Defendants' use of the Photo was a fair use. The Daily Mail used a photograph from Sertich's social media account for the transformative purpose of exposing the "unbelievable truth" that the "80's dating videos" were scripted and staged, allowing readers to make a side-by-side comparison like other "online sleuths" had done to identify the hoax. The use of a cropped version of the published Photo was reasonably necessary to serve this transformative purpose, and did not negatively impact the market for the original work, which Plaintiff concedes was non-existent. His copyright claim should be dismissed as a matter of law.

Section 107 of the Copyright Act provides that "fair use of a copyrighted work…for purposes such as criticism, comment, … scholarship, or research, is not an infringement of

---

[5] In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider documents attached to the complaint, which here include Sertich's Instagram post and the Article. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 579 (S.D.N.Y. 2020); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

copyright." 17 U.S.C. § 107. In determining whether a challenged copying is fair use, courts consider: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id*. The four factors must be considered together, and none may be "treated in isolation." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). Defendants need not establish that each of these factors weighs in their favor. *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476-77 (2d Cir. 2004) (internal citation omitted).

Courts in this Circuit routinely grant motions to dismiss where, as here, "the facts necessary to establish [fair use] are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)); *see also Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 86–92 (2d Cir. 2014); *Marano v. Metro. Museum of Art*, 844 F. App'x 436, 438 (2d Cir. 2021) (same); *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 460 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021). Discovery is unnecessary where it would not provide additional information relevant to the fair use issue. *See, e.g.*, *May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 188 (S.D.N.Y. 2019) (noting that courts have adjudicated motions to dismiss based on a fair use defense "when 'discovery would not provide any additional relevant information' and '[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue'") (alterations in original); *Arrow Prods., Ltd., LLC*, *v. Weinstein Co.*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014) (determining discovery was unnecessary as "[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue.").

Here, the Court need only look at Sertich's original Instagram post and the Article, which demonstrate that the Photo was used for a distinct purpose in the Article; that only the amount reasonably necessary to serve that purpose was used; and the Article did not affect the use of the original photograph for Instagram.

### A. The Purpose and Character of the Use Weighs in Favor of Fair Use

Because the Article used the Photo for a different purpose and character than its original social media use, the first factor weighs in favor of fair use.

#### 1. The Article's Use of the Photo Was Transformative

The first factor examines "the reasons for, and nature of, the copier's use of an original work." *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) ("*Warhol*"). The central question is whether the challenged use "merely 'supersede[s] the objects' of the original creation" or instead has a "further purpose or different character." *Id*. (quoting *Campbell*, 510 U.S. at 579). The inquiry is use-specific; courts focus on what the defendant did with the work, compared to the original purpose for it. *Id*. at 545-46. The larger the difference between the original purpose and the challenged use, the more strongly the first factor favors a finding of fair use. *Id*. at 529.

Courts will find a transformative purpose where, as here, a news article uses a photograph not merely as window-dressing, but to provide information to readers concerning the particular subject of a controversy or dispute. For example, in *Whiddon v. BuzzFeed, Inc.*, 638 F. Supp. 3d 342, 350–52 (S.D.N.Y. 2022), the plaintiff took photographs of a friend before and after a motorcycle accident. *Id*. at 346. The friend, a social-media influencer, posted the photographs to Instagram, prompting online criticism that the photographs appeared staged. *Id*. at 351-52. The defendant reproduced screenshots of the post that included the photographs in reporting on the "controversy surrounding [the] social media post about the accident." *Id*. at 347. The court held

that the defendant's use was transformative because it was for a "far different purpose than the one for which the [p]laintiff took the pictures or [the influencer] used them." *Id*. at 351. The photographer took the photographs to depict the influencer and the accident, whereas defendant used them so that "readers could consider whether the motorcycle accident appeared staged and/or the product of an advertising partnership." *Id*. The photographs "informed readers and prompted them to consider whether [the p]ost and [the] accident were inauthentic"; their juxtaposition allowed readers "to form an opinion" about the controversy and assess the credibility for themselves. *Id*. at 351-52. The court concluded that defendant's use of the photographs was "necessary and appropriate for reporting on the controversy" because the photographs helped explain why social media users suspected the photographs were staged. *Id*. at 353. *See also Yang v. Mic Network Inc.*, 2022 WL 906513, at *2 (2d Cir. Mar. 29, 2022) (summary judgment order) (finding transformative use where defendant used screenshot containing cropped portion of a photograph to identify and comment on an article that generated online criticism); *Walsh*, 464 F. Supp. 3d at 581–83 (finding transformative use where the social-media interaction containing photograph was itself the subject of the reporting); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22-23 (1st Cir. 2000) (holding photographs created for modeling portfolios served a different purpose when reproduced with editorial commentary to explain the public controversy the photographs had generated, because "the pictures were the story").

The same reasoning applies here. Sertich's display of the Photo on her Instagram page and Defendants' use in the Article had markedly different purposes. As originally published, the Photo depicted actress Annie Sertich seated on the stairs in a domestic setting, with a bed visible behind her, as one of four personal images in a carousel posted to her Instagram account. It was

typical social-media self-expression, which included a playful comment ("I only sit in flats and stand in heels. #steppinginto2026 #dancingontheceiling [dancer emoji] #hashtagsareapparentlyOUT"), showcasing her style and sense of humor to her social media followers. Compl. Ex. 2.

The Article used the Photo for a completely different purpose. The Article reported on a viral online controversy concerning the supposed 1980s dating videos, disclosed that online sleuths had recognized several of the performers, and presented readers with evidence of the hoax, by comparing screenshots of the so-called "VHS dating tape" of "Gwen" with Sertich's photograph. *See* Compl. Ex. 3. As in *Whiddon*, 638 F. Supp. 3d 342, this "informed readers and prompted them to consider whether [the VHS Dates tapes] were inauthentic"; the comparison of the images allowed readers to "to form an opinion" about the controversy for themselves. The Photo's caption in the Article expressly explained this point: "'Gwen' is actually actress Annie Sertich (pictured), *proving that the videos are staged* and not authentic vintage tapes from the '80s." Compl. Ex. 3 at 2 (emphasis added).

As the Supreme Court recognized in *Warhol*, copying may be justified where it is "reasonably necessary to achieve the user's new purpose." *Warhol*, 598 U.S. at 531–32. Here, use of the Photo was reasonably necessary to demonstrate that "Gwen" was really Sertich, and the VHS Tapes site was a hoax.

**2. The Article Uses the Photo for News Reporting**

Section 107 of the Copyright Act makes clear that "criticism, comment [and] news reporting" are core fair use areas. As discussed above, the Photo here is integral to the commentary and reporting on the "VHS Dates" hoax, which falls well within this presumptively protected space.

Plaintiff's Complaint goes to great lengths to focus on Defendants' status as commercial enterprises, as if news publishers should not be so crass as to make money. *E.g.*, Compl. ¶¶ 38, 52. However, as the Supreme Court said in *Campbell*, if "commerciality carried presumptive force against a finding of fairness," that presumption "would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research," because those activities "are generally conducted for profit in this country." 510 U.S. at 584 (internal quotation marks omitted). *See also, e.g., Swatch Grp.*, 756 F.3d at 81–83 ("purposes such as …news reporting" are set forth in the Copyright Act as prototypical examples of fair use, 17 U.S.C. § 107, and the Second Circuit has "recognized that almost all newspapers, books and magazines are published by commercial enterprises that seek a profit") (citation omitted).

Moreover, when the use of copyrighted material is highly transformative, as is the case here, a defendant's status as a "for-profit" company carries little weight. *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006). Here, as discussed above, the Photo was not used for its original purpose (Sertich displaying pictures of herself to her social media followers), but for purposes of revealing that a supposedly vintage "VHS Dates" video was fake. *See Campbell*, 510 U.S. at 579 ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."); *accord Blanch*, 467 F.3d at 253–54 (discounting commerciality where the secondary use was substantially transformative and the defendant's economic gain did not come "to the exclusion of broader public benefits").

Moreover, courts assign alleged "commerciality" little weight where "the link between [the defendant's] commercial gain and its copying is … attenuated" and the use cannot fairly be characterized as a commercial exploitation of the copyrighted work. *Swatch Grp.*, 756 F.3d at

83; *see also Blanch*, 467 F.3d at 253–54 (commercial exploitation factor principally concerns an unauthorized use designed to obtain financial rewards as a direct consequence of the copying). This is particularly true in the news context because "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit." *Swatch Grp.*, 756 F.3d at 83.

Here, the Photo was one component of an Article reporting on viral dating videos, public uncertainty about their authenticity, and online efforts to identify the performers. Defendants did not sell, license, or otherwise exploit the Photo as a standalone product; it was included in the Article to enable readers to evaluate whether the 1980s "Gwen" was really modern-day Sertich. Any connection between Defendants' general commercial benefit from publishing the Article and their use of this particular Photo is attenuated, at best. Thus, the first factor favors a finding of fair use.

**B. The Nature of the Copyrighted Work Weighs in Favor of Fair Use**

The second factor considers "the nature of the copyrighted work." 17 U.S.C. § 107(2). Courts ask "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch,* 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of Copyright,* § 15:52 (2006)); *see also N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. 2015). Here, this factor favors fair use because the Photo is more factual than creative, and it was publicly disseminated before the Article was published.

Courts assess where a photograph falls on the spectrum between informational and creative by examining the expressive choices reflected in the particular work. *See Walsh*, 464 F. Supp. 3d at 584–85 (finding celebrity photograph had "both informational and creative elements" because it documented a public figure at an event but also reflected "some technical skill and aesthetic judgment"). But a photograph that merely records a person or event is more factual than creative in character. *See Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 430–31 (S.D.N.Y. 2018) (finding a photograph "more factual than creative" because the photographer "did not direct or pose the subjects of the photo, nor control the lighting or the background").

Here, the Complaint alleges in general terms that Moore "conceived, composed, shot, and selected" the Photo. Compl. ¶ 21. But there are no allegations that Moore was singularly responsible for choosing or constructing the setting, creating the background, choosing Sertich's clothing, directing her posture or expression, or otherwise staging the scene to communicate a particular artistic vision. To the contrary, the Photo is a candid, natural shot of Sertich sitting on the stairs of a home, reflecting minimal (if any) creative choices. Because it plainly is "more factual than creative," *Otto*, 345 F. Supp. 3d at 430, this factor weighs in favor of fair use.

Second, the Photo's publication on Annie Sertich's Instagram prior to the Article's publication also supports a finding of fair use. Compl. ¶¶ 24–26 & Ex. 2. *See Walsh*, 464 F. Supp. 3d at 584–85; *Boesen v. United Sports Publications, Ltd.*, 2020 WL 6393010, at *5 (E.D.N.Y. Nov. 2, 2020) (finding this factor tipping in defendant's favor where "plaintiff ha[d] published it on his own social media page and website, in addition to [the subject] sharing it on her Instagram."). Courts regularly conclude that prior publication offsets or substantially reduces the value assigned to the copyright owner's monopoly rights. *See McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 612–13 (S.D.N.Y. 2020) (finding that prior publication weighed in favor of

fair use); *Michael Grecco Prods, Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 506 (S.D.N.Y. 2018) (finding that the second factor "does not favor either party" even where professional photograph was highly creative, because it had already been extensively published); *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000) (concluding that, although the photograph was creative, its prior widespread publication prevented the second factor from weighing materially against fair use).

Given the Photo's minimal creativity and prior publication, the second factor weighs in favor of finding fair use.

**C. Defendants Used No More of the Photo than Was Reasonably Necessary**

The third factor, which considers whether "'the quantity and value of the materials used' are reasonable in relation to the purpose of the copying," also favors a finding of fair use. *Blanch*, 467 F.3d at 257 (quoting *Campbell,* 510 U.S. at 586). Fair use does not require a secondary user to take the smallest amount theoretically possible; the user may copy "'at least enough' of the original" to fulfill the transformative purpose. *Brown,* 462 F. Supp. 3d at 462 (citing *Campbell*, 510 U.S. at 588). "'In the context of news reporting and analogous activities ... the need to convey information to the public accurately may … make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration.'" *Whiddon*, 638 F. Supp. 3d at 355 (alterations in original) (quoting *Swatch Group*, 756 F.3d at 84). Accordingly, even reproduction of an entire photograph may be reasonable where the defendant's transformative purpose requires readers to see the image. *See Marano v. Metropolitan Museum of Art*, 472 F. Supp. 3d 76, 88–89 (S.D.N.Y. 2020) (holding use of entire photograph was reasonable because the photograph provided visual context for an exhibition

concerning the depicted guitar, and noting that the museum reduced the photograph's size and displayed it with explanatory text and other images), *aff'd*, 844 F. App'x 436.

In *Yang v. Mic Network Inc.*, the defendant reproduced roughly the upper half of a portrait as part of a screenshot of the newspaper article that was the subject of its reporting and criticism. The court held that the use was reasonable "to achieve the purpose of both identifying the object of controversy and satirizing the Post Article and [its subject]." 405 F. Supp. 3d 537, 547 (S.D.N.Y. 2019), *aff'd*, 2022 WL 906513, at *2.

Similarly, Defendants did not reproduce the Photo in its full original presentation. First, the Photo originally appeared as "one image within a multi-image 'carousel' post." Compl. ¶ 24. The Article selected only the one image needed to make the comparison, rather than reproducing other photographs or the carousel's complete social-media presentation. That selectivity confirms that Defendants' use was tailored to the Photo's comparative function, rather than directed toward appropriating the carousel's personal or aesthetic presentation.

Second, the Article cropped the Photo to focus on Sertich's face and appearance, excluding details irrelevant to the Article's reporting, such as her shoes and portions of the original image above and below her figure. That cropping was tailored to the Article's transformative purpose: enabling readers to compare the present-day performer with "Gwen" to evaluate the online identification reported in the Article. And in any event, the amount used was reasonable in light of the transformative purpose. *See Marano*, 472 F. Supp. 3d at 88–89.

Accordingly, the third factor also favors fair use.

**D. The Article Did Not Usurp the Photo's Market**

In evaluating the fourth fair use factor, courts look "not for theoretical or speculative harm," but for copying amounting to a "significantly competing substitute." *Walsh*, 464 F. Supp. 3d at 586 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015)). The central

inquiry is whether the challenged use "usurps the market of the original work." *Blanch*, 467 F.3d 258 (internal quotation marks and citation omitted).

In *Walsh*, the photograph did not appear by itself, but as part of an Instagram post presented alongside text and another image. The court held that the use posed no plausible risk to the licensing market because "'there [was] little risk that someone looking to license or purchase an image of [Cardi B] would select the [Post] instead of the Photo, thereby potentially diverting revenue to [the defendant] that would have otherwise gone to [the plaintiff].'" *Walsh*, 464 F. Supp. 3d at 586 (alterations in original); *see also Yang*, 405 F. Supp. 3d at 548 (finding no plausible market substitution where the photograph appeared in a cropped, composite screenshot rather than on its own, making it implausible that potential purchasers would choose the screenshot instead of licensing the original); *Boesen*, 2020 WL 6393010, at *6 (finding little market harm because the cropped, low-resolution photograph appeared alongside text in an Instagram post and was "a poor substitute for the original").

Here, the Article did not present the Photo as a standalone portrait or as a replacement for its original Instagram depiction. Instead, the Article used a cropped version of one photograph from the Instagram carousel of images, juxtaposed with the purportedly vintage screenshot of "Gwen," in a report examining the authenticity of the viral VHS tapes. *Compare* Compl. Ex. 2 and 3. A reader seeking an original Photo of Sertich would not look to the image in the Article as a substitute—nor would Plaintiff or Sertich have used the Photo to disclose that the "VHS Dates" site was a hoax. *See Campbell*, 510 U.S. at 592 (noting that "[t]he market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop.").

Moreover, Plaintiff effectively concedes that *there was no market for the original image*. The Complaint makes the conclusory assertions that Plaintiff lost "the licensing fee [the Photo] commanded," Compl. ¶ 52, and Defendants "supplanted the work's licensing market," *id*. ¶ 117, but it acknowledges that Plaintiff has *never sold, assigned, licensed, or otherwise transferred any right, title or interest in the Photo to any publisher whatsoever*. Compl. ¶ 23. Nor is there any allegation that Plaintiff was attempting to do so. *See Whiddon*, 638 F. Supp. 3d at 356 (noting that "there is no indication within Plaintiff's Complaint that at any point she intended to license the Photographs" and finding no market harm "where … plaintiff had no intention of entering the market"); *Kelley v. Morning Bee, Inc.*, 2023 WL 6276690, at *14 (S.D.N.Y. Sept. 26, 2023) (noting "even if a use does infringe an exclusive right, '[o]nly an impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets should be legally cognizable when evaluating a secondary use's effect upon the potential market for or value of the copyrighted work.'") (citation omitted). Instead, the Complaint alleges only that Plaintiff provided the Photo *to Sertich*, who posted it to her Instagram account. *See id*. ¶¶ 23–25; *Whiddon*, 638 F. Supp. 3d at 355 (concluding that the photographer's willingness to share photographs with their subject for publication on Instagram "cuts against any suggestion that Plaintiff had plans to commercialize the Photos").

In addition, where (as here) a use is transformative, this affects the fourth factor as well. *E.g., Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614–15 & n.6 (2d Cir. 2006) (finding no market harm despite the plaintiff's established licensing market and stated willingness to license the images, because the defendant's transformative use was "markedly different" from the uses the plaintiff typically licensed); *Kelley,* 2023 WL 6276690, at *14, (noting a "close linkage between the first and fourth factors, in that the more the copying is done

to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original.") (quoting *Campbell,* 510 U.S. at 587).

In sum, there was no market for the Photo, and even if there had been, the Article did not compete in or usurp that market. The fourth factor therefore favors fair use.

For all the reasons set forth above, this Court should find that Defendants' use of the Photo was a fair use as a matter of law, and dismiss Plaintiff's copyright infringement claim with prejudice.

## III. PLAINTIFF HAS NOT AND CANNOT SUFFICIENTLY ALLEGE FACTS ESTABLISHING A CMI CLAIM

Plaintiff's attempt to allege a violation of 17 U.S.C. § 1202(a) of the Digital Millennium Copyright Act ("DMCA") is fundamentally flawed, and should be rejected.

The DMCA reflects a critical balance: it was enacted to "ensure the integrity of the electronic marketplace by preventing fraud and misinformation," while limiting liability "in the interest of promoting growth, development, and innovation in the digital universe." *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020) (citing H.R. Rep. 105-551(1) at 10, 11-12 (1998)). As relevant here, Section 1202 prohibits the distribution of false "copyright management information," such as the work's title, author, or copyright owner, that is displayed in connection with the work. 17 U.S.C. § 1202(a)-(c). But to plead a violation of Section 1202(a), a plaintiff must plausibly allege *both* that the (1) defendant knowingly provided or distributed that false copyright information *and* (2) that the defendant did so *with the intent to induce, enable, facilitate, or conceal an infringement*. *Id.* § 1202(a). These elements constitute an exacting "double scienter" requirement, without which a violation of Section 1202(a) cannot be found. *See Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018). As the Copyright Office has explained:

> Section 1202 neither mandates the inclusion of CMI on works, nor penalizes the mere removal of attribution information. Instead, the removal, falsification, or alteration of CMI is *only* actionable under 1202 if a fairly stringent dual intent standard is satisfied.

U.S. Copyright Office, *Authors, Attribution, and Integrity: Examining Moral Rights in the United States*, (Apr. 2019), p. 93 (citing S. Rep. No. 105-190, at 16-17 (1998)) (emphasis added), available at https://perma.cc/37H4-FQHB.

Plaintiff cannot satisfy this "stringent" requirement here, because he has not sufficiently alleged—and cannot plausibly allege—intent, the second scienter requirement. The Complaint contends Defendants violated Section 1202(a) by using a "uniform editorial practice" of stamping images with "© [source]." Compl. ¶ 4. But this allegation, even if it could be proven, does not demonstrate that Defendants added "© instagram" to the Photo with the "intent to induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(a).[6] It shows the opposite.

First, Plaintiff's intent theory rests on conclusory allegations about the existence and effect of a source-labeling process. *See* Compl. ¶¶ 3, 107, 108. But the Complaint fails to allege nonconclusory facts supporting the inference that the "© instagram" label was applied to Plaintiff's Photo—the only copyrighted work currently at issue—for the *purpose* of inducing, enabling, facilitating, or concealing infringement. *See McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 370 (2d Cir. 2026) (emphasis added); *Krechmer*, 747 F. App'x at 9. A generalized

[6] For purposes of this motion, Defendants argue only that Plaintiff's allegations with respect to *intent* fail to state a claim. That said, Plaintiff's allegations concerning Defendants' purported *knowledge* are also insufficient on the basis that, among other things, they amount only to constructive knowledge and only "actual knowledge" can satisfy the first of the scienter requirements. *See Regisford v. Lockamy*, 2025 WL 2444191, *3 (S.D.N.Y. Aug. 25, 2025) ("Construing the double scienter requirement of § 1202(a) to permit constructive knowledge in place of actual knowledge would run afoul of well-established rules of statutory interpretation"). Defendants reserve the right to challenge Plaintiff's allegations of knowledge if the case proceeds.

allegation that an automated process generated a source label does not satisfy the pleading requirements as to Plaintiff's Photo.

Specifically, this allegedly standardized, automated practice cannot satisfy the DMCA's requirement that Defendants acted "intentionally." As an initial matter, "intent" is an inherently *subjective* standard, but there is no subjectivity involved in what the Complaint characterizes as Defendants' "systematic, standardized practice." Compl. ¶ 108; *see also id.* ¶ 3 (describing Defendants' "templated step in the production process."). Indeed, the Complaint alleges that the process of adding a copyright credit to any photograph is the same regardless of whether a photograph was copied from Instagram or was a licensed use. *Id.* ¶ 107; *see also* ¶ 3. In short, although Plaintiff alleges that the crediting system does not distinguish between licensed photographs and those sourced from Instagram, he asks this Court to treat them differently, and to infer an "intent to conceal copyright infringement" whenever a photograph is taken from a social media post. But the alleged intent cannot exist if, as Plaintiff alleges, the requisite intent "follows from the design of the practice itself" (Compl. ¶ 107) where that design is alleged to be an automated system.

Analogous cases brought under the related Section 1202(b) provision demonstrate why actions by automated systems do not suffice to show the requisite intent. Like Section 1202(a), Section 1202(b) has a double scienter element that requires the plaintiff to plead and prove that the defendant intended to "induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b); *see also Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (explaining that Section 1202(b) has a "double scienter" requirement). In *Logan*, the court held that the plaintiff did not meet Section 1202(b)'s double scienter requirement where the defendant's removal of the CMI was an unintended byproduct of

its automated process: "Unlike editing a plaintiff's watermark out of a photo, automatically omitting CMI by embedding a photo out of the full context of the webpage where the CMI is found cannot itself plead intentionality as required by the DMCA." *Id*. at 1064. The same holds true here, based on Plaintiff's allegations of automated source labeling: If Defendants' crediting system automatically identified the Photo's source, then Defendants necessarily could *not* have affirmatively manipulated the credit with the intent to "conceal" anything.[7] Or, put differently, Defendants could not have credited Instagram with the copyright "for the *purpose* of concealing copyright infringement," as required by the statute. *McGucken*, 166 F.4th at 370 (emphasis added).

Second, Plaintiff cannot satisfy the second scienter element by relying on his conclusory allegation about knowing falsity. The statute requires facts supporting a distinct purpose: to induce, enable, facilitate, or conceal infringement. *See Krechmer*, 747 F. App'x at 9 (explaining that to plead a violation of 1202(a), a plaintiff must plausibly allege "knowingly *and* intent to induce, enable, facilitate, or conceal an infringement.") (emphasis in the original). Here, however, Plaintiff conflates the first and second prong of the double scienter requirement, appearing to base his assertion of intent to conceal on the allegation of "knowing falsity." While he points to various aspects of the allegedly standardized crediting system (none of which show intent), his underlying logic seems to be that since Defendants designed this system knowing that the CMI was false with respect to images taken from social media, Defendants must have necessarily "intended" to conceal the underlying infringement. Compl. ¶¶ 106-07. But this

[7] Defendants' crediting of Instagram also undermines any argument that they were trying to conceal an allegedly unauthorized use. To the contrary, Defendants pointed readers directly to the source of the photograph by identifying Instagram and Sertich. Plaintiff does not allege—nor could he—that Defendants removed his name or other CMI from the Photo posted on Sertich's account; on its face, it shows no such information was there.

effectively reads the "intent" language and requirement entirely out of the statute. As a matter of straightforward statutory interpretation, this collapse of two distinct requirements is improper.

Where, as here, "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. DiCristina*, 726 F.3d 92, 96 (2d Cir. 2013). Moreover, it is well established that a court must "give effect, if possible, to every clause and word of a statute," *Moskal v. United States*, 498 U.S. 103, 109–110 (1990), "so that no part will be inoperative or superfluous, void or insignificant," *Corley v. United States*, 556 U.S. 303, 314, (2009). Under these foundational principles of statutory interpretation, Plaintiff cannot satisfy the intent prong simply by alleging that Defendants knew "© instagram" was false CMI; doing so would obviate 1202(a)'s requirement to allege two distinct scienter elements.

Case law from other contexts reinforces this point. Where knowledge and intent are treated as separate elements of a claim, alleging knowledge of falsity alone will not suffice to meet a plaintiff's burden as to intent. For example, in *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc*., the Supreme Court considered whether the Illinois Attorney General could maintain a claim against a fundraising organization based on its fraudulent misrepresentations to potential donors. 538 U.S. 600 (2003). As the Court explained, when a claim requires both knowing falsity and an intent to deceive—or, under Section 1202, conceal—the plaintiff can prevail *only* if it demonstrates that the defendant engaged in relevant action "with the intent" to do so. *Id*. at 620 ("As restated in Illinois case law, to prove a defendant liable for fraud, the complainant must show that the defendant made a false representation of a material fact knowing that the representation was false; further, the complainant must demonstrate that the defendant made the representation with the intent to mislead the listener, and succeeded in doing so."). *See also United States v. Alvarez*, 567 U.S. 709, 718-22 (2012) (explaining that, generally, false

statements alone cannot be a basis for liability). Plaintiff has not, and cannot, meet his burden here.

Finally, the statute's intent requirement implicitly depends on knowledge that the underlying use constituted *infringement*. Where, as here, the original use is not infringing (*see supra* Section II), the plaintiff cannot plead the necessary intent to "induce, enable, facilitate, or conceal *infringement*." 17 U.S.C. § 1202(a) (emphasis added). For example, in *Bain v. Film Independent, Inc.*, 2020 WL 5491314, at *6 (C.D. Cal. Aug. 6, 2020), the court held that where the incorporation of a clip from plaintiff's film into defendant's acting reel was fair use, there were no grounds to conclude that the defendant's deletion of a watermark on the footage and distribution of the reel to casting directors "could induce, enable, facilitate, or conceal an infringement," *aff'd*, 2022 WL 17592422 (9th Cir. Dec. 13, 2022). *See also Kadrey v. Meta Platforms, Inc.*, 2025 WL 1786418, at *1 (N.D. Cal. June 27, 2025) ("[B]ecause Meta's copying was not an infringement, its removal of CMI could not have furthered an act of infringement."); *Reiner v. Canale*, 301 F. Supp. 3d 727, 743 (E.D. Mich. 2018) ("The statutory text of the DMCA makes clear that any violation of the DMCA is necessarily derivative of an independent infringement of a right under Title 17 of the United States Code. As Plaintiff has failed to demonstrate that any infringement of any right of his was clearly established, Defendant is entitled to qualified immunity on Plaintiff's DMCA claim as well.").

For these reasons, Plaintiff's CMI claim should likewise be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss with prejudice Plaintiff's Complaint, in its entirety.

Dated: September 11, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ James Rosenfeld*

James Rosenfeld
Hilary Oran
Olalekan Sumonu
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
jamesrosenfeld@dwt.com
hilaryoran@dwt.com
osumonu@dwt.com

Kenneth Payson (*pro hac vice application forthcoming*)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150
Fax: 206-757-7016
kennethpayson@dwt.com

*Attorneys for Defendants Associated Newspapers Ltd. and Mail Media, Inc.*

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS**

I hereby certify that the word count of this memorandum of law complies with the word limits of 2(B) of This Court's Individual Rules and Practices. According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 6,966 words.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ James Rosenfeld*

James Rosenfeld

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all parties of record in this case.

*/s/ James Rosenfeld*

James Rosenfeld